UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEVAUGHN WATSON | Case No. 3:21-cr-98 (JBA)<br><br>November 3, 2022 |

**RULING ON MOTION FOR JUDGMENT OF ACQUITTAL**

Defendant Jevaughn Watson moves for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c) [Doc. # 503] on the grounds that there was insufficient evidence to support the jury's verdict convicting him of the charged marijuana conspiracy, and that co-defendant Tajh Wiley's counsel's acknowledgment of the existence of a marijuana conspiracy could have been mistakenly interpreted by the jury as evidence that Defendant was part of the acknowledged marijuana conspiracy. (Def. Mem. in Support of Mot. for Acquit. [Doc. # 503-1].) For the reasons that follow, Defendant's motion is denied.

**I.     Factual Background**

Defendant Watson was indicted with co-defendants Tajh Wiley and Kenston Harry (and others) for conspiracy to distribute and to possess with intent to distribute cocaine and marijuana. (Superseding Indictment [Doc. # 179].) Wiley and Harry's trials were severed on a showing of irreconcilable defenses; Defendant and Wiley were tried together in July 2022. (Minute Entry, July 13, 2022 [Doc. # 425].) The Government presented evidence specific to both Wiley and Watson; the relevant evidence specific to Watson's culpability included:

- A text message from Wiley to Watson on March 29, 2021 where he tells Watson to "[g]rab the 2 and the 3 runtz" and asks whether the price is "cool," to which Watson replies "Bet." Wiley also told Watson "I'm give you your points in it too" (Gov't's Mem. in Opp. to Def.'s Mot. to Acquit. [Doc. # 568] at 5);

- Text messages from March 30, 2021 where Watson sends a phone labeled "Flex Hartford" the address for Action Audio, followed by a video of a substance appearing to be marijuana, sent within a day of the conversation with Wiley about the "runtz" (*id.* at 6; July 20, 2022 Tr. at 1000);
- GPS coordinates stored in Watson's phone from March 30, 2021[1] for 2814 Main Street, the address of Action Audio. (July 20, 2022 Trial Tr. [Doc. # 483] at 1015; Tr. Exh. 443);
- Testimony from Special Agent McHugh that he conducted surveillance on Wiley and Watson on May 7, 2021, and saw Watson and Wiley meet up at a rest stop in Milford before driving to park at a street corner in the Bridgeport/Stratford area; Watson then drove away to a nearby location for a few minutes, drove back to where Wiley had been parked, and departed. McHugh's testimony was accompanied by text messages in which Watson texted Wiley in the hours before the May 7 encounter that he "Need 300," and that moments after Watson departed, Wiley messaged Harry that Watson "literally just got out of my car as we speak" and that Wiley was "about to go count the bread right now." (Gov't's Mem. at 7-8);
- A wiretap call from May 11, 2021 in which Wiley called Watson and told him "I told you I was breaking bread with you on my profit that I made. Off the 1500, I was breaking bread with you," and evidence from Special Agent Penagos that "bread" often refers to money (*id.* at 7); and

---

[1] The Government explained at oral argument that the March 30, 2021 date accounts for the time difference between UTC, used in the actual exhibit, and EDT.

- A call from May 23, 2021 in which Wiley described his relationship with Watson ("I knew Russ[2] for mad long. Like we gotta business relationship") (*id* at 7-8.)

When evidence concluded, the Court instructed the jury on the permissibility of drawing inferences, including from circumstantial evidence; on the required elements of the conspiracy charge; and on the legal definition of conspiracy. (*Id.* at 9-12.) The Court also denied Defendant counsel's request for a multiple conspiracy instruction on the grounds that there was no evidence that there were two or more groups operating separately from each other, making the instruction inappropriate. (*Id.* at 13.) The jury convicted Defendant of conspiracy to distribute and possess with intent to distribute marijuana but acquitted him on the foreseeability of the cocaine portion of the conspiracy. (*Id.* at 2.) The Defendant also moved for a mistrial [Doc. # 441] on the basis of Tajh Wiley's counsel's statements in closing admitting Wiley's participation in a conspiracy, arguing that the admission presented a fundamentally inconsistent defense with his own, before the verdict was issued; the Court denied that motion [Doc. # 542].

## II.   Legal Standard

"The standard on a motion for a judgment of acquittal is stringent, and a defendant claiming that he was convicted based on insufficient evidence 'bears a very heavy burden.'" *United States v. Tigano*, 113 F. Supp. 3d 656, 659 (W.D.N.Y. 2015) (quoting *United States v. Blackwood*, 366 Fed. Appx. 207, 209 (2d Cir.2010)). "A Rule 29 motion [for a judgment of acquittal] should be granted only if the district court concludes there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Irving*, 452 F.3d 110, 117 (2d Cir. 2006) (internal quotations omitted). The Court must view the evidence presented at trial in the light most favorable to the Government and draw all reasonable inferences in its favor. *United States v. Cote*, 544 F.3d 88, 98 (2d Cir.

---

[2] The Government presented evidence at trial that Russ was a nickname for Watson.

2008). The evidence must be viewed in "totality, not in isolation," *United States v. Huezo*, 546 F.3d 174, 178 (2d Cir. 2008), because "each fact may gain color from others." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999). "[I]t is well settled that 'Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury.'" *Cote,* 544 F.3d at 99 (quoting *Guadagna*, 183 F.3d at 129).

To uphold a conviction of conspiracy when it is challenged in a motion for judgment of acquittal, "[t]he record must [] permit a rational jury to find: (1) the existence of the conspiracy charged, (2) that the defendant had knowledge of the conspiracy, and (3) that the defendant intentionally joined the conspiracy." *United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008) (internal citations omitted). "When a defendant challenges the sufficiency of the evidence in a conspiracy case, 'deference to the jury's findings is especially important . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel.'" *Id.* (quoting *United States v. Morgan*, 385 F.3d 196, 204 (2d Cir. 2004)).

### III.    Discussion

The Government argues that it demonstrated the following: (1) a conspiracy existed with Wiley and Harry at the center that spanned multiple substances, prices, transactions, and individuals, which was corroborated by the seizure of controlled substances from Harry's residence and business; (2) Watson was connected to Wiley's drug dealing based on Wiley's statement that he was in a "business relationship" with Watson, their texts about the "runtz," and their in-person meet-up shortly after a text about "need[ing] 300;" and (3) Watson was involved in a specific marijuana deal in furtherance of the conspiracy based on his text message to Flex Hartford with Kenston Harry's Action Audio store address and the video of marijuana that immediately followed, sent within a day of his texts with Wiley about

4

"runtz" and accompanied by GPS data showing that Watson's phone had saved the address for Action Audio to his phone on the same day. (Gov't's Mem. at 17-19; Trial Exh. 483.)[3]

Defendant argues that there are innocent reasons for each of these messages or incidents, but his strategy of trying to explain away each link in the Government's inferential chain is unavailing because the evidence must be viewed in its totality in assessing whether it supports an inference that the conspiracy to distribute marijuana existed, that Defendant knew of the conspiracy, and that he intentionally joined and acted in furtherance of it. The Government "need not negate every theory of innocence," *United States v. Autuori,* 212 F.3d 105, 114 (2d Cir. 2000). Moreover, although Defendant emphasizes that he was never found with marijuana in his possession and that there is no direct evidence like surveillance videos of his participation in the conspiracy as belying the weakness of the government's case, (Def. Mem. at 3-4), a jury verdict "may be based entirely on circumstantial evidence." *Tigano*, 113 F. Supp. 3d at 660.

As for Wiley's admission through counsel in closing argument to Wiley's involvement in a conspiracy to distribute marijuana, the Court has already explained why the remarks did not cause Defendant prejudice or undermine the jury's verdict in its prior ruling on his motion for a mistrial. (*See* Order Denying Mot. for Mistrial [Doc. # 542] at 3-4.) As the Court previously noted, Wiley's counsel never mentioned Watson by name in closing argument, instead stating that "the government did prove, we concede, that there was a limited conspiracy with Harry to sell cocaine and marijuana . . . They proved that Mr. Wiley is a drug dealer. They proved a conspiracy to sell drugs with Mr. Harry." (July 21, 2022 Trial Tr. [Doc.

---

[3] The Government argues that a number of messages between Watson and an individual named "Littles" are also evidence that points to his participation in the marijuana conspiracy with Wiley because the timing and content of their conversation allows for a reasonable inference that Littles was a downstream customer in the marijuana conspiracy. Defendant's counsel at oral argument argued that there is no evidence these conversations were part of or in furtherance of the conspiracy, and so should not be considered. The Court will not consider these statements in deciding whether the evidence was sufficient for a reasonable jury to convict Watson of the marijuana conspiracy.

# 484] at 1215, 1222.) The Court guarded against the possibility that the jury would use evidence only inculpating Wiley as evidence against Watson by instructing the jury both that closing arguments are not evidence and that "the evidence as to one defendant may or may not apply to the other defendant and as such, you are to treat the evidence or lack of evidence as to each defendant separately. You must also consider each count separately and return a separate unanimous verdict of not guilty or guilty as to each count and as to each defendant." (Order Denying Mot. for New Trial at 3-4 (quoting July 21, 2022 Trial Tr. at 1113).)

Finally, the jury demonstrated its ability to follow the instructions and "sift through voluminous evidence and differentiate among various defendants" by rejecting part of the Government's theory and acquitting Defendant on the cocaine charge, by submitting questions about the meaning of "runtz" and by requesting portions of a witness' testimony to be read back. *United States v. Casamento*, 887 F.2d 1141, 1150 (2d Cir. 1989). To the extent Defendant speculates that the jury's questions and verdict instead suggest that the jury reached a compromise verdict, he has pointed to no specific conduct on the jury's part to support his theory, and "[e]ven if juror misconduct such as a compromise verdict is a possibility in a given case, a new trial cannot be sustained when 'there is an equally reasonable and perhaps even better explanation which involves no jury misconduct.'" *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (quoting *Ajax Hardware Mfg. Corp. v. Indus. Plants Corp.*, 569 F.2d 181, 184 (2d Cir. 1977)).

## IV. Conclusion

As explained above, the Court DENIES the motion for judgment of acquittal. Sentencing will be scheduled for January 31, 2022 at 3 p.m. in Courtroom Two; the initial Presentence Report is due December 7, 2022; objections are due December 21, 2022; the final Presentence Report is due December 31, 2022; Defendant's Sentencing Memorandum is due January 4, 2023; the Government's Sentencing Memorandum is due January 14, 2022.

IT IS SO ORDERED.

_____/s/_____<br>
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 3rd day of November, 2022.